**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW W. BROTHERS, | ) | CASE NO. 5:16-cv-01942 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Social Security,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Andrew W. Brothers (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying his application for Supplemental Security Income ("SSI") under

Titles XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

### I.  Procedural History

The December 5, 2014 decision set forth the following procedural history of Plaintiff's

application for disability:

> Records indicate that an application for child's Supplemental Security Income was protectively filed upon his behalf on *** 2006, when he was 16 years of age. He was found "disabled" and awarded benefits accordingly. He attained age 18 in *** 2007 and, as required by law, his ongoing eligibility for Supplemental Security Income was subsequently redetermined under the rules governing disability of adults. By letter dated September 24, 2009, he was notified as to a finding that his disability had ceased on September 1, 2009 (Exhibit 2B). He appealed and that determination was upheld upon reconsideration (Exhibits 3B, 5B, 6B, 7B and 12B). On October 1, 2010, the claimant filed a written request for a hearing (20 CPR § 416.1429 *et seq*.). On November 19, 2010, he in writing voluntarily waived his right to personally appear and testify at such hearing (Exhibits 10B and 11B). On March 2, 2012, Administrative Law Judge J. Dell Gordon issued a decision that was unfavorable to the claimant, based solely upon the available documentary evidence of record (20 CPR § 416.1448(b)). The judge noted in rendering that decision his consideration of the fact that the claimant had no legal or other representation. His decision effectively affirmed the prior determination that the claimant's childhood disability as previously established had ceased on September 1, 2009. Further, he found that the claimant had not since become again disabled under the rules and regulations that govern disability for adults (Exhibit 5A/1, 10).

> The Appeals Council granted the claimant's subsequent request for review of that decision (Exhibit 13B). By order dated June 14, 2013, it vacated the decision of Judge Gordon and remanded the case in order to have addressed various unresolved issues and evidence submitted with the request for review, and to afford the claimant opportunity for a new hearing and decision (Exhibit 6A). Pursuant to that order, another hearing was duly scheduled, twice postponed and rescheduled, and then ultimately held by video teleconferencing on October 23, 2014 (Exhibits 20B, 22B, 25B, 28B and 31B) (20 CPR §§ 416.1429 *et seq*. and 416.1436(c)).

(Transcript ("Tr.") 13).

Plaintiff participated in the hearing on October 23, 2014, was represented by counsel, and testified. (Tr. 36-81). A vocational expert ("VE") also participated and testified. *Id*. On December 5, 2014, the ALJ found Plaintiff not disabled. (Tr. 13-27). On June 4, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On August 2, 2016, Plaintiff filed a complaint

challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to comply with Social Security Ruling ("SSR") 16-3p, and (2) the ALJ erred by using claimant's lack of credibility to undermine the severity of Plaintiff's pain. (R. 15).

## II. Evidence

### A. Personal and Vocational Evidence

Plaintiff was born in 1989 and was 18-years-old on the date his eligibility for SSI was redetermined. (Tr.275) He had a high school education and was able to communicate in English. (Tr. 25) He had no past relevant work. *Id*.

### B. Relevant Medical Evidence[1]

#### 1. Treatment Records

On December 1, 2010, Plaintiff reported experiencing 2 to 3 seizures per month to Rekha Parulkar, M.D. (Tr. 717). Plaintiff was noted to weigh 300 pounds. *Id*.

On March 7, 2011, Plaintiff was seen by Dr. Parulkar, and complained that he began experiencing pain in his back pain one week earlier after moving furniture. (Tr. 716).

Ten months later, on January 11, 2012, Plaintiff sought treatment for right-sided lower back pain at the East Liverpool City Hospital's emergency room ("ER"). (Tr. 660). Plaintiff reported that the back pain began after a fall. *Id*. Plaintiff claimed that he had a history of back problems and was seeing a chiropractor. *Id*. Plaintiff believed that moving furniture and ripping up carpet

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

had exacerbated his back problem. *Id*. Plaintiff further reported that the pain radiated to his legs while walking, but denied numbness or tingling in his lower extremities. *Id*. On examination, Plaintiff had full muscle strength in his extremities, no edema, and moved all extremities without pain or limitation. (Tr. 661) Plaintiff was given three Vicodin tabs. *Id*.

The following day, on January 12, 2012, Plaintiff went to a different ER at the Heritage Valley Health System. (Tr. 783-784). Plaintiff reported right-sided lower back pain after helping his mother move and performing heavy lifting and twisting. *Id*. He stated that, at times, the pain shoots down into his legs and is worse when he walks. (Tr. 783). Right-sided paraspinal spasm was noted in the lumbar area. *Id*. The ER physician did not believe any imaging was warranted, and prescribed Vicodin and Flexeril. (Tr. 783-784).

On January 24, 2012, Plaintiff was seen by Dr. Parulkar. (Tr. 715). His chief complaint was requesting something for ankle/foot pain noting that "DR didn't give him anything." *Id*.

On February 11, 2012, Plaintiff went to a third ER at the Trinity Health System complaining of left sided lower back pain and some leg pain (Tr. 765). Plaintiff reported that the pain was bothering him on and off for three weeks. *Id*. His medications were listed as "Ibuprofen apparently." *Id*. Examination of Plaintiff's left lower back revealed positive straight leg raise, grossly intact muscle strength and neurovascular status, a little bit of weakness with plantar flexion of his left foot compared to the right, and difficulty ambulating due to pain. Plaintiff was diagnosed with left lumbar radiculopathy and a herniated disc. *Id*. He was given Percocet, Prednisone, and Flexeril, and also received a shot of Norflex. (Tr. 765-766).

On February 17, 2012, Plaintiff was seen by Dr. Parulkar, and complained of continuing back and leg pain (Tr. 714). Dr. Parulkar noted that the ER believed she should be the one to refer Plaintiff to a surgeon as Plaintiff's primary care physician. *Id*.

On February 21, 2012, Plaintiff was seen by Duke J. Thomas, M.D., complaining of a three-week history of excruciating left leg pain. (Tr. 628). X-rays show minimal degenerative changes in the lumbar spine. *Id*. Dr. Thomas prescribed Percocet and Medrol. *Id*.

On February 29, 2012, a lumbar spine MRI revealed a "[l]arge extruded disc at L4-5 resulting in severe spinal stenosis, given the fact that this is superimposed on a congenitally small lumbar canal," and "[a]dditional disc herniation of the protrusion type at L5-S1, which results in less severe compromise of the left hemicanal at that level." (Tr. 643).

On March 8, 2012, Plaintiff returned to Dr. Thomas, complaining of left leg pain and weakness. (Tr. 627). Dr. Thomas recommended surgical intervention and Plaintiff indicated he would like to proceed with the surgery after being informed of the possible risks. *Id*.

On April 13, 2012, Dr. Thomas performed a laminectomy and partial discectomy. (Tr. 635-636).

On April 26, 2012, Plaintiff reported to Dr. Thomas that he was 40% improved, but still had numbness, tingling, and weakness in his leg. (Tr. 626). He was taking Percocet and Soma for the pain. *Id*. Dr. Thomas prescribed Percocet with no refills. *Id*.

On June 14, 2012, Plaintiff returned to Dr. Thomas reporting that his back pain was "back to where he started." (Tr. 625). Dr. Thomas prescribed Percocet and Soma and ordered a new MRI. *Id*.

On June 22, 2012, a new lumbar MRI was performed showing considerable reduction in disc material at the L4-5 level, with mild to moderate central canal narrowing, and an annular tear and protrusion at the L5-S1 level with nerve root impingement. (Tr. 1039-1040).

On June 22, 2012, Plaintiff went to the Heritage Valley Health System ER complaining of continuing lower back pain. (Tr. 796-797). On examination of Plaintiff's back, there was

"diffuse tenderness, more so left paraspinous region. There is some pain with straight leg raising. There are no true radicular symptoms." (Tr. 797). Plaintiff was given four Vicodin and Medrol. *Id*.

On July 19, 2012, Dr. Thomas indicated Plaintiff's prior discectomy at L4-5 looked "pretty good," but Plaintiff had a large disc herniation at the L5-S1 level for which Dr. Thomas recommended surgical intervention. (Tr. 624). Plaintiff was prescribed ninety Percocet and Soma. (Tr. 624).

On August 9, 2012, Dr. Thomas diagnosed spinal stenosis, degenerative disc disease, neural foraminal stenosis, especially towards the left side with a herniated disc at L5-S1. (Tr. 623). Dr. Thomas again recommended surgical intervention, and Plaintiff indicated he would like to proceed with the surgery after being informed of the possible risks. *Id*. Plaintiff was prescribed Oxycodone. *Id*.

On September 13, 2012, Dr. Thomas performed a laminectomy and fusion of Plaintiff's lumbar spine at the L5-S1 level. (Tr. 629-630).

On September 27, 2012, Dr. Thomas noted that Plaintiff continued to report "a lot of back pain" and left leg numbness though Plaintiff was doing a lot of walking. (Tr. 622). X-rays of the back showed that bone graft, screws and cage were in good position. *Id*. Plaintiff was prescribed ninety Oxycodone with no refills. *Id*.

On November 29, 2012, Plaintiff was seen by Dr. Thomas. (Tr. 621). Plaintiff reported that his back was "still a little bit bothersome but overall it is slowly making some improvements." (Tr. 621). Dr. Thomas noted "[p]ain in the lower lumbar portion of the back, pain in the abdominal area but no signs of any kind of hernia." *Id*. Plaintiff was prescribed ninety Oxycodone. *Id*.

On February 3, 2013, Plaintiff went to the East Liverpool City Hospital ER indicating that he had fallen one hour earlier, resulting in mid-back pain. (Tr. 689-693). "The review of systems ha[d] nothing pertinent to offer in regards to the chief complaint." (Tr. 689). Plaintiff was prescribed Vicodin and Flexeril and instructed to follow up with his doctor if pain continues. (tr. 691). He was diagnosed with a back contusion. *Id*.

The next day, on February 4, 2013, Plaintiff met with his primary care physician, Dr. Parulkar, complaining of back pain despite two back surgeries in 2012. (Tr. 710). Plaintiff had told Dr. Parulkar that his back doctor had instructed him to see his family doctor since over ninety days had elapsed since his surgeries. *Id*. The treatment note bears no indication Dr. Parulkar was made aware of the previous day's ER visit. (Tr. 709-710, 727-728). Plaintiff was requesting something for his pain and was prescribed Percocet. (Tr. 709-710). On examination, Plaintiff had back pain radiating to his hip, but also full motor strength in his extremities, normal sensation, and normal tandem gait. (Tr. 728).

On February 21, 2013, Plaintiff returned to Dr. Thomas (Tr. 620). Plaintiff was still reporting some back pain, but overall he was "doing a little bit better" (Tr. 620). On examination, Plaintiff had full motor strength in his extremities, and no radicular symptoms. *Id*. X-rays showed that the internal hardware was in good position. *Id*. Plaintiff indicated that he had been trying to get into pain management. *Id*. Dr. Thomas prescribed ninety Oxycodone, but told Plaintiff he would not prescribe pain medications on a long-term basis and informed him of the need to see a pain management specialist. *Id*.

On March 6, 2013, Plaintiff returned to Dr. Parulkar for his one month examination and refills. (Tr. 709). Dr. Parulkar's treatment notes contain a hand-written description of the narcotic prescriptions Plaintiff obtained from three separate sources during February of 2013: "Petitioner.

Had gotten 15 Vicodin from ER on 2-3-13 and prescription for Percocet from Dr. Rekha on 2-4-13 and 90 Oxycodone 15mg from Dr. Derek Thomas on 2-21-13." (Tr. 709).

On April 11, 2013, Dr. Thomas noted that Plaintiff was showing some signs of improvement, was doing some maintenance work, and walked to work. (Tr. 619). On examination, Plaintiff had full motor strength in his extremities, equal reflexes, and pain in his lower lumbar region. *Id*. Plaintiff reported that he was still trying to find pain management doctors. *Id*. Despite Dr. Thomas's previous admonition, he prescribed ninety Percocet. *Id*.

Between August 5, 2013 and September 30, 2013, Plaintiff attended physical therapy for his back pain. (Tr. 968-978). Plaintiff did not show up for or cancelled numerous scheduled sessions. (Tr. 971-978). In fact, Plaintiff attended only six sessions of therapy despite being scheduled three times per week. (Tr. 979).

According to Plaintiff, sometime during 2013, Plaintiff began treatment with Thomas A. Ranieri, M.D. (Tr. 360, 365). The ALJ noted that Dr. Ranieri was a pain management specialist. (Tr. 21). The parties have not pointed to any treatment records from this source, and it is unclear whether they are part of the record submitted by Plaintiff. Plaintiff did testify that he was going to a "pain clinic" where he received Percocet. (Tr. 56).

On January 23, 2014, Plaintiff returned to Dr. Thomas. (Tr. 1021). He continued to report that he was trying to get into pain management. (Tr. 1021). On examination, Plaintiff exhibited full motor strength, pain in the lower lumbar area, and global weakness and numbness in his left foot. *Id*. Dr. Thomas prescribed Percocet and Soma. *Id*.

On April 24, 2014, Plaintiff was seen by Dr. Thomas and reported that he was "still having some pain in the back as well as, the legs. He is trying to do some heavy labor stuff which is making him more painful." (Tr. 1020). Plaintiff also reported that he was still trying to get into

pain management. *Id*. Dr. Thomas diagnosed spinal stenosis. *Id*. Dr. Thomas prescribed ninety Percocet and Soma. (Tr. 1020).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On August 22, 2013, Plaintiff attended a consultative evaluation with Sushil Sethi, M.D. (Tr. 854-860). On manual muscle testing, Plaintiff was normal in all areas except in the dorso-lumbar spine where flexion was reduced from 90 (normal) to 80, extension was reduced from 30 (normal) to 20, right lateral flexion was reduced from 30 (normal) to 25, and left lateral extension was reduced from 30 (normal) to 25. (Tr. 857-860). Dr. Sethis's impression was history of seizure disorder that is under control, chronic back pain status post L5-S1 fusion, and history of bipolar disorder with good control with Lithium. (Tr. 856). Dr. Sethi concluded that Plaintiff's "ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects is normal. His hearing, speaking, and traveling are normal." (Tr. 856).

On January 23, 2014, in a treatment note, Dr. Thomas opined that Plaintiff's congenital spinal stenosis was a long-term problem, and he did not think Plaintiff would ever be able to return to gainful employment. (Tr. 1021). Dr. Thomas assessed that Plaintiff would likely require more surgeries in the future. *Id*.

On October 16, 2014, Dr. Parulkar completed a medical source statement concerning Plaintiff's physical abilities and limitations for Social Security disability claims. (Tr. 1048-1049). She opined that Plaintiff could stand for 2 hours at a time, for a total of 4 hours; sit for 4 hours at a time; he could lift 20 pounds frequently and occasionally; occasionally bend, but never stoop or balance; frequently engage in fine and gross manipulation bilaterally; frequently operate a motor vehicle; and occasionally work around dangerous machinery. (Tr. 1048). She opined that

9

Plaintiff's pain was severe.[2] (Tr. 1049).

## C. Relevant Hearing Testimony

At the October 23, 2014 hearing, Plaintiff testified as follows:

- He is 6'1" tall and weighs 270 pounds. (Tr. 48).

- He has never had a driver's license, and took public transportation to the hearing. (Tr. 48).

- He graduated from high school in 2008 and attended special education classes. (Tr. 49).

- He has never worked full-time. (Tr. 50). The only job he ever had lasted four days before he was let go for being "too slow." (Tr. 50-51).

- He has participated in a program called Ohio Works First ("OWF"), which required him to perform volunteer work in return for cash assistance. (Tr.52-53). It entailed repainting and refurnishing apartments for approximately 22 hours each month. (Tr. 53).

- He underwent two surgeries on his lower back in 2012. The surgeries did not help and he "still has the same pain and everything." (Tr. 54). He has no additional surgeries scheduled. (Tr. 58). Heavy lifting aggravates his back. (Tr. 56).

- He had received Percocet through a pain clinic. (Tr. 56). He can no longer find a pain clinic that will take him, and he now receives Percocet from his family doctor. *Id*. He has never received an injection for pain and "won't take no shots or nothing in my back." (Tr. 70).

- His other prescribed medicines include Depakote, Lithium, Topamax, and Adderall. (Tr. 56).

- His mental problems include bipolar disorder, stress, anxiety, and attention deficit hyperactivity disorder. (Tr. 56). He sees Rob Parsons for mental health treatment once a month. *Id*. He was in the process of setting up an appointment with a therapist. (Tr. 57).

- He can walk for half a mile on level ground before it starts to hurt. (Tr. 57). He has not been prescribed a cane, walker, or any other ambulatory assistive device. (Tr. 57-58). He can stand for 25 to 30 minutes, bend forward, and squat. (Tr. 58). He sometimes lifts and carries 50 pounds. (Tr. 59). He can sit for 30 minutes to an hour. (Tr. 59). He has difficulty climbing stairs. (Tr. 71).

---

2 The form did not ask how long Dr. Parulkar believed Plaintiff could walk in an 8-hour workday. (Tr. 1048-1049).

- He does not know how often he has a seizure. His last one was a couple of months earlier. (Tr. 59). He does not have problems with his memory, but does have problems remembering right after a seizure. (Tr. 59-60). His medication pretty much controls his seizures. (Tr. 60).

- He has asthma, which he stated was not that bad except in the summertime due to pollen. He smokes up to half a pack of cigarettes daily. (Tr. 61).

- He sleeps three to five hours per night. (Tr. 61). His sleeping problems predate his back surgery. (Tr. 66).

- He takes care of his personal hygiene, cooks meals, reads the newspaper, does the laundry, washes dishes, goes grocery shopping, feeds two cats, sweeps the floor, rakes leaves, and generally cleans up. (Tr. 62-63).

- He has mood swings and gets impatient with people when he goes shopping on Black Friday. (Tr. 65). He has not had a panic attack "for awhile." (Tr. 69).

Plaintiff's wife, Marissa Brothers, also testified. (Tr. 43-47). She has been married to Plaintiff for two years and they have one child, a 4-year old daughter. (Tr. 44). She testified that Plaintiff suffers from grand mal seizures, resulting in Plaintiff shaking on the floor for 20 minutes per seizure. (Tr. 45). Sometimes he stops breathing and she calls "an ambulance if I don't think he will come out of one. Most of the time I usually don't have to call an ambulance." *Id*. After a seizure, Plaintiff is "really weak and tired for at least up to an hour or two." *Id*. The frequency of his seizures was unpredictable, though she stated they occur "once or twice a month or once every couple months." (Tr. 47). Plaintiff performs chores around the house, including washing dishes, laundry, cleaning the house, and playing with their daughter. (Tr. 47). He requires "breaks every now and then because his back tends to hurt a lot. Other than that I mean he can do it." *Id*.

The ALJ posed the following hypothetical question to the VE:

The record indicates that his age would be 19 to 25, his education level is high school with special ed. He testified that he could read and write and do simple arithmetic. The functional level is borderline -- intellectual functioning level is

borderline. The assessment to consider is the light exertional level of work. Light is lifting 20 pounds occasionally, ten pounds frequently, standing and walking six to eight hours a day with normal breaks and sitting six to eight hours a day with normal breaks. No climbing of any ladders, ropes or scaffolds. Only occasionally use ramps or stairs and balance, stoop, kneel, crouch and crawl. Environmental considerations should include avoiding concentrated exposure to temperature extremes, vibration, fumes, odors, dust, gases and poor ventilation and avoid all hazards. Now the work must be simple, routine, unskilled work, only occasional interaction with supervisors and coworkers and the public. There needs to be a low stress work setting, so I'll define that for you as no rapid production or assembly line, limited decision making responsibility.

(Tr. 72-73).

The VE testified that such an individual could perform the following jobs: mail sorter, Dictionary of Occupational Titles ("DICOT") 209.687-026, light exertional with an SVP of 2 (450 regional jobs, 132,000 jobs nationally); clothes folder, DICOT 369.687-018, light exertional level with an SVP of 2 (225 regional jobs, 200,080 jobs nationally); routing clerk, DICOT 222.687-022, light exertional with an SVP of 2 (500 regional jobs, 110,000 jobs nationally). (Tr. 73-74). She indicated that her testimony was consistent with the DICOT. (Tr. 74).

In response to a question from Plaintiff's counsel, the VE testified that an additional limitation of being off-task 20 percent of the time would eliminate all jobs. (Tr. 74).

In response to a hypothetical posed by Plaintiff's counsel encompassing the limitations assessed by nurse practitioner Parsons, the VE testified there would be no jobs. (Tr. 75-76).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  As such date is established by applicable regulations, the claimant attained age [in] July [of] 2007, the day before the actual date of his 18th birthday on July [—] (20 CFR § 416.120(c)(4)). He was eligible for Supplemental

Security Income as a child for the month that preceded the month during which he attained such age. The claimant was notified on September 24, 2009, that he had been found no longer "disabled" as of September 1, 2009, based upon a redetermination of his disability status under the rules for adults who file new applications.

2. During the period at issue, i.e., since September 1, 2009, the claimant has evidenced the following medically determinable impairments that, either individually or in combination, are "severe" and have significantly limited his ability to perform basic work activities for a period of at least 12 consecutive months: degenerative disc disease of the lumbosacral spine and residual effects, status post L4-5 laminectomy/partial discectomy (April 2012) and L5-Sl partial corpectomy and fusion (September 2012); history of seizure disorder as a child; borderline intellectual functioning; bipolar disorder (controlled on medication); and personality disorder (20 CFR § 416.920(c)).

3. During the period at issue, the claimant has had no medically determinable impairments, whether considered individually or in combination, that have presented symptoms sufficient to meet or medically equal the severity criteria for any impairment listed in Appendix 1, Subpart P, Regulation No. 4 (20 CFR §§ 416.920(d), 416.925 and 416.926).

4. Throughout the period at issue, the claimant has had at least the residual functional capacity to perform a range of work activity that: requires no more than a "light" level of physical exertion; requires no climbing of ladders, ropes or scaffolds, or more than occasional performance of other postural movements (i.e., balancing, climbing ramps or stairs, crawling, crouching, kneeling or stooping); entails no concentrated exposure to temperature extremes, vibration, fumes, odors, dust, gases or poor ventilation; entails no exposure to hazards (e.g., dangerous moving machinery, unprotected heights); involves only simple, unskilled, routine tasks; involves no rapid production or assembly line duties; entails limited decision making responsibility; and involves no more than occasional interaction with others (including coworkers/supervisors and the public) (20 CFR §§ 416.920(e) and 416.1567(a),(b)).

5. The claimant has no "vocationally relevant" ["]past work" experience and thus, has acquired no potentially transferable work skills (20 CFR §§ 416.965 and 416.968).

6. The claimant throughout the period at issue is appropriately considered for decisional purposes as a "younger individual"(20 CFR § 416.963).

7. The claimant has attained a high school education and is able to

communicate in English (20 CFR § 416.964).

8.      Considering the claimant's age, level of education, lack of work experience and prescribed residual functional capacity, he has been capable throughout the period at issue of performing jobs that exist in significant numbers within the national economy (20 C.F.R. §§ 416.960(c) and 416.966).

9.      The claimant has not been under a "disability," as defined within the Social Security Act, at any time during the period at issue herein, i.e., since September 1, 2009 (20 CFR §§ 416.920(g) and 416.987(e)).

(Tr. 16-26).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

## B. Plaintiff's Assignments of Error: Credibility and the Application of SSR 16-3p

### 1. Retroactivity of SSR 16-3p

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility, and argues that Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which replaced SSR 96-7p, 1996 WL 374186 (Jul. 2, 1997), should be applied retroactively despite the fact that the ALJ's decision was rendered on December 5, 2014.[3] (R.15, PageID# 1131-1134). The Commissioner does not concede that SSR 16-3p applies retroactively, but maintains that the ALJ's evaluation of Plaintiff's symptoms was proper under either ruling. (R. 17, 1151). Nonetheless, "[i]t is the Commissioner's position that the court should review the agency's decision under the Ruling in effect at the time of the ALJ's decision." *Id*. at n. 3 (*citing* 76 Fed. Reg. 19692-01 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions")). Therefore, the Commissioner advocates for the application of SSR 96-7p. *Id*.

"District courts within this Circuit have disagreed regarding the retroactivity of SSR 16–3p and the Sixth Circuit has not decided the issue." *Goddard v. Berryhill*, No. 1:16CV1389, 2017 WL 2190661 at *20 (N.D. Ohio May 1, 2017) (collecting cases) (Greenberg, M.J.), *report and recommendation adopted*, 2017 WL 2155391 (N.D. Ohio May 17, 2017). Indeed, as pointed out by the Commissioner and the *Goddard* court, the Sixth Circuit has declined to "reach the issue of whether [SSR 16-3p] applies retroactively." *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113

---

3 On March 24, 2016, the Social Administration issued a notice of correction indicating that SSR 16-3p's effective date was March 28, 2016, and not March 16, 2016, as previously noted. SSR 16-3P, 2016 WL 1237954 (Mar. 24, 2016)

at n. 1 (6ᵗʰ Cir. 2016).

A significant number of decisions have found that retroactive application of SSR 16-3p would be inappropriate. *See, e.g., Kapp v. Comm'r of Soc. Sec.*, No. 2:16cv222, 2017 WL 1194492 at *12 (S.D. Ohio Mar. 31, 2017) ("Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively."); *Cameron v. Colvin*, No. 1:15cv169, 2016 WL 4094884 at *2 (E.D. Tenn. Aug. 2, 2016) (same); *Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951 at *9 (N.D. Ala. Mar. 31, 2017) (same); *Howard v. Berryhill*, No. 3:16cv318, 2017 WL 551666 at *6 (N.D. Tex. Feb. 10, 2017) (same); *Powell v. Colvin*, No. 3:16cv56, 2016 WL 6562071 at *7 (E.D. Va. Oct. 14, 2016) ("The Agency does not have the power to engage in retroactive rulemaking."), *report and recommendation adopted*, No. 3:16cv56, 2016 WL 6542849 (E.D. Va. Nov. 3, 2016). These decisions all rely on the United States Supreme Court's decision in *Bowen v. Georgetown University Hospital*, which found that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. 204, 208 (1988). The Sixth Circuit Court of Appeals has observed that it was "not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in federal courts, absent, of course, ex post facto or due process concerns not present here." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6ᵗʰ Cir. 2007); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6ᵗʰ Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

Conversely, there is also a line of case law that has applied SSR 16-3p retroactively.[4] Those decisions, however, have typically found that "although retroactivity is disfavored in the law, retrospective application of a Social Security rule that clarifies rather than changes existing law 'is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.'" *Patterson v. Colvin*, No. 13cv1040, 2016 WL 7670058 at **8–9 (W.D. Tenn. Dec. 16, 2016), *report and recommendation adopted*, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017) (quoting *Pope v. Shalala*, 998 F.2d 473, 482-85 (7th Cir. 1993)); *Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("where new rules merely clarify unsettled or confusing areas of the law, retroactive application is proper" and finding that "SSR 96-7p and SSR 16-3p are substantially similar"); *Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666 at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic.")

Plaintiff has not argued that the ALJ's credibility analysis is flawed based on SSR 96-7p, and adamantly advocates for the retroactive application of SSR 16-3p. (R. 15, PageID# 1131-1138). Implicitly, such an argument plainly reflects Plaintiff's belief that SSR 16-3p substantively *changed*, rather than merely clarified, the rules regarding subjective symptom

---

[4] In a previous report and recommendation, this court applied SSR 16-3p retroactively. *Sypolt v. Berryhill*, No. 4:16-CV-01410, 2017 WL 1169706, at *7 (N.D. Ohio Mar. 8, 2017) (Ruiz, M.J.), *report and recommendation adopted*, 2017 WL 1155542 (N.D. Ohio Mar. 28, 2017) (Lioi, J.) However, that recommendation was based on a determination that SSR 16-3p did not substantively alter SSR 96-7p and, therefore, the outcome was the same when applying either rule. Here, Plaintiff's position seeking retroactive application of SSR 16-3p contains the implicit argument that SSR 16-3p affected a significant, substantive change in the rules governing the evaluation of claimants' statements concerning their symptoms.

evaluation and would make a dispositive difference in the case at bar.[5] Rather, according to the very language of SSR 16-3p, its purpose is to "clarify" the rules concerning subjective symptom evaluation and not to substantially *change* them. However, after considering Plaintiff's argument, implicitly seeking retroactive application of a substantive change, and the above line of cases, the court concludes, in an abundance of caution, it would be inappropriate to apply SSR 16-3p retroactively.

### 2. The ALJ's Credibility Assessment

According to SSR 96-7p, 1996 WL 374186 (as well as SSR 16-3p), evaluating an individual's alleged symptoms entails a two-step process. First, an ALJ must determine whether a claimant has a "medically determinable impairment" that could reasonably produce a claimant's alleged symptoms. *Id*. at *2. The ALJ's decision clearly found the first step was satisfied and states that Plaintiff's impairments "could reasonably be expected to produce some of the symptoms he has alleged." (Tr. 23). Once step one is satisfied, when considering the intensity, persistence, and limiting effects of an individual's symptoms," an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures, other than treatment, an individual uses or has used to relieve pain or other symptoms; and, (7) any other

---

[5] The court strongly disagrees with Plaintiff's conclusion that failure "to apply SSR 16-3p retroactively would ignore the plain language of the rule." (R. 15, PageID# 1134). Nothing in the ruling suggests that it must be applied retroactively.

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p at *3.

However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.")(citations omitted).

Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 1996 WL 374186 at *2.[6] Rather, an ALJ's "decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

---

[6] SSR 16-3p merely replaced the term "credible" in this sentence with the terms "supported or consistent." 2016 WL 1119029 at *9.

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id*. at *2. "While in theory [a court] will not 'disturb' an ALJ's credibility determination without a 'compelling reason,' *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

Plaintiff's argument is not entirely clear. Plaintiff essentially argues that the ALJ erred at the first step of the credibility analysis by asserting that "[t]he ALJ clearly made determinations that diminished Mr. Brother's credibility," and used this determination to find that "the objectively established medical condition is not of such a severity that it can reasonably be expected to produce the alleged disabling pain." (R. 15, PageID# 1136). This statement is misguided. The ALJ, however, expressly found that: "[h]aving fully considered the evidence of record, the undersigned finds that the claimant has had medically determinable impairments during the period at issue that could reasonably be expected to produce some of the symptoms that he has alleged." (Tr. 23). In keeping with his argument earlier in his brief, the court construes Plaintiff as asserting that the ALJ erred at the *second* step of the pain analysis. (R. 15, PageID# 1135).

Herein, the ALJ's credibility analysis is spread throughout the decision, wherein the medical evidence is recounted in great detail. The ALJ found as follows:

> As indicated above, the claimant on multiple occasions in 2013 and 2014 obtained narcotic prescriptions in Center Township, Pennsylvania from Dr. Thomas. The claimant was consistently noted at those visits to be unsuccessfully seeking pain management. However, evidence sided [sic] above indicates his involvement with pain management as of at least August 2013. Further, he has since indicated that he began treatment in 2013 at Allied Pain Treatment Center with Thomas A. Ranieri, M. D. a pain management specialist (Exhibits 20E/1 and 25E/1 ). The

claimant also indicated that he had been treated since 2009 by Rekah Parulkar, M. D. in East Liverpool, Ohio and that she prescribed him narcotic pain medication (Percocet) (Exhibit 27E/ l). She noted on March 6, 2013, that the claimant had gotten narcotics (15 Vicodin) from an emergency room on February 3, 2013, then a narcotic prescription (Percocet) from her on February 4, 2013, and then had obtained narcotics (oxycodone) from Dr. Thomas on February 21, 2013 (Exhibit 15F/2). Thus, the claimant's statements offered in conjunction with his pain complaints are inconsistent with other evidence. Evidence indicates that he engaged in drug-seeking behaviors and that he has obtained narcotic prescriptions from multiple providers. Physical examinations in January and February 2014 at East Liverpool City Hospital yielded no back or musculoskeletal complaints. The foregoing circumstances and evidence substantially diminish the claimant's underlying credibility and clearly contraindicate the presence of any listing-level (or otherwise disabling) vertebrogenic impairment that persisted for any 12 consecutive months bearing upon the period at issue.

***

[T]he undersigned has considered all of the claimant's alleged symptoms in accordance with the requirements of 20 CFR § 416.929, and Social Security Rulings 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR § 416.927, and Social Security Rulings 96-2p, 96-5p and 96-6p. In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) -- i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques -- that could reasonably be expected to produce the claimant's alleged pain or other debilitating symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the *credibility of the statements* based on a consideration of the entire case record. Having fully considered the evidence of record, the undersigned finds that the claimant has had medically determinable impairments during the period at issue that could reasonably be expected to produce some of the symptoms that he has alleged. However, the claimant's October 2014 hearing testimony and attributed statements of record concerning the intensity, persistence and limiting effects of his impairment-related symptoms throughout such period are not entirely credible.

Medical evidence bearing upon the claimant's functionality has been discussed in significant part above. He does not present as a consistent or reliable informant. He has provided inconsistent and inaccurate information as to the extent of his historical substance abuse. He has engaged in drug-seeking behaviors. He has demonstrated long-term reliance upon narcotic pain medications and has apparently obtained concurrent opiate prescriptions from multiple providers. He has offered inconsistent pain complaints and information at visits resulting in his obtainment of narcotics. It appears that he has used alcohol and marijuana during the period of adjudication and while being prescribed opioids or psychotropic medication. He has indicated to a doctor that he has been employed doing maintenance and "heavy" labor less than one year after his second back surgery. In February 2012 he reported that his pain had started only three weeks earlier. He has fathered and cared for a child while seeking disability benefits. He has evidenced no inclination to obtain a driver's license, which could present an impediment to seeking employment and incentive to continue to obtain disability benefits.

(Tr. 21, 23-24).

The court does not find any impropriety in the ALJ's thorough review of the evidence or his reasonable conclusion that Plaintiff engaged in drug-seeking behavior. The ALJ did not violate any provision of SSR 96-7p by finding that Plaintiff's subjective statements concerning his pain levels were not credible. "Consideration of a claimant's alleged drug-seeking behavior is also proper in assessing the credibility of a claimant's statements to physicians regarding his physical pain." *Allgood v. Comm'r of Soc. Sec.*, No. 1:12cv1513, 2013 WL 1858183 at *4 (N.D. Ohio May 2, 2013) (Nugent, J.) (*citing Thompson v. Comm'r of Soc. Sec.*, Case No. 11cv12034, 2012 WL 1340443 (E.D.Mich. Mar. 15, 2012)); *Howerton v. Colvin*, No. 3:13cv337, 2015 WL 569712 at *6 (S.D. Ohio Feb. 11, 2015) ("the ALJ's conclusion that Plaintiff had exaggerated her symptoms and limitations to obtain Nubain and Phenergan was within the ALJ's 'zone of choice' when assessing Plaintiff's credibility"), *report and recommendation adopted*, 2015 WL 1476668 (S.D. Ohio Mar. 31, 2015); *Byrd v. Comm'r of Soc. Sec. Admin.*, No. 5:12cv828, 2013 WL

1150138 at *7 (N.D. Ohio Jan. 14, 2013) ("Courts have found that a claimant's drug-seeking behavior coupled with refusals by treating physicians to prescribe narcotics is sufficient to undermine the claimant's credibility.") (White, M.J.), *report and recommendation adopted*, 2013 WL 1154295 (N.D. Ohio Mar. 19, 2013).[7] This court declines to find that an ALJ is barred from considering a claimant's drug-seeking behavior when determining whether to credit a claimant's statements regarding the intensity, persistence or limiting effects of his symptoms. Especially where the drug-seeking behavior involves pain medication and the symptom at issue is pain, as in the case at bar, the court considers such behavior highly relevant.

In addition, the ALJ did not discount the limiting effects of Plaintiff's pain symptoms based solely on drug-seeking behavior. The ALJ also referenced Plaintiff's inconsistent statements regarding the severity of his symptoms, Plaintiff's misleading statement that he was still looking for a pain management program when he was already being treated by a pain specialist, and Plaintiff's efforts to work at a rather heavy exertional level. Therefore, the court finds no merit to

---

[7] Though not addressed by many courts in the context of SSR 16-3p, there are some cases that either applied SSR 16-3p (finding that SSR 16-3p merely clarified existing rules) or found that a credibility determination was proper under both SSR 16-3p or SSR 96-7p, and further determined that drug-seeking behavior was a proper factor to consider in making an adverse credibility determination. *See, e.g., Smith v. Berryhill*, No. 2:16cv1247, 2017 WL 1502799 at *8 (D. Or. Apr. 26, 2017) ("An ALJ's finding that a claimant is engaged in drug-seeking behavior is a clear and convincing reason for rejecting a claimant's symptom testimony.") (*citing Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (upholding an ALJ's finding that a claimant's reported limitations were not credible when he was found to be "exaggerating his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction")); *Sturgeon v. Colvin*, No. CV-15-342, 2016 WL 8230662 at *12 (D.N.M. Sept. 14, 2016) (affirming ALJ's credibility determination under SSR 16-3p due to claimant's efforts to find work and possible drug-seeking behavior); *Pak-Walker v. Colvin*, No. 3:16cv5286, 2016 WL 7325197 at *7 (W.D. Wash. Dec. 16, 2016) ("Although this SSR [16-3p] is not binding on the ALJ in the matter herein due to its effective date, even under this new SSR, the findings noted herein are relevant for multiple reasons, including that the ALJ's inference that plaintiff presented with pain complaints seeking narcotics as noted by various treatment providers …"); *Best v. Berryhill*, No. 16cv1189, 2017 WL 1332719 (D. Kan. Apr. 11, 2017).

Plaintiff's argument under SSR 96-7p.[8]

## IV.   Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: June 22, 2017

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[8] The court's determination would be the same if it applied SSR 16-3p.